IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

YUSEF HASAN SYKES,

    Petitioner,

v.                                                     Civil Action No. 3:10CV654

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Yusef Hasan Sykes, a Virginia state prisoner represented by counsel, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the City of Newport News (the "Circuit Court"). Sykes contends that he is entitled to relief because of his trial counsel's alleged ineffective assistance:

    Claim One:    Trial counsel was ineffective regarding the questioning and striking of venireman Grover Lilley. (§ 2254 Pet. 13.)

    Claim Two:    Trial counsel was ineffective regarding the absence of a blood trail. (§ 2254 Pet. 22.)

    Claim Three:    Trial counsel was ineffective regarding the prosecutor's allegedly improper closing argument. (§ 2254 Pet. 28.)

Respondent filed a motion to dismiss arguing that Sykes's claims lack merit. The matter is ripe for adjudication.

## I. PROCEDURAL HISTORY

Sykes was convicted by a jury in the Circuit Court for first degree murder and use of a firearm in commission of a felony. The

Circuit Court sentenced Sykes to life in prison plus three years. Sykes appealed.

The Court of Appeals of Virginia, in analyzing a challenge to the sufficiency of the evidence, aptly summarized the facts of the crime as follows: That summary, to the extent that it is pertinent to Sykes's Claim Two, follows:

> On the night of June 9, 2006, Javon Johnson was shot to death while he was outside the Denbigh Trace Apartments in Newport News. The fatal bullet entered Johnson's left back, traveled upward through his body, perforated his lung and pulmonary artery, and exited his chest.
> Before the shooting, Johnson was with Robert Arroyo, Quantrell Garrett, Robert Nichols, and another friend drinking alcohol in a park at Denbigh Trace. The group walked down Bellfield Drive to the corner of Clearbrook Road, near the apartment [Sykes] shared with his girlfriend, Jannalesse.
> [Sykes], who was outside his apartment, confronted Johnson about his presence in the area. [Sykes] was "pacing around" Johnson. [Sykes] said, "What are y'all doing out here?" [Sykes] pulled a gun out of his right pocket and pointed it at Johnson. Johnson held his hands in the air. Arroyo and others intervened to calm the situation. Freda Holloman, a friend of [Sykes's], told him to put away the gun. Eventually, [Sykes] lowered the gun. Johnson and his friends started to leave the scene where the argument had occurred.
> As Johnson and his group were walking down Clearbrook Road, they heard the sound of gunshots being fired behind them. They immediately started running. Johnson said he had been shot, and fell to the ground.
> Officer Karen Bozeman, who was in the vicinity of the shooting, heard six or seven gunshots in quick succession, and the sound of glass breaking. As Bozeman drove toward the area of the gunshots, several men were running in her direction. They asked for help for their friend, Johnson, who had been shot.
> The police found eight .380 automatic cartridge casings in the vicinity of the shooting. A firearms expert testified that the cartridge casings had been fired from the same .380 caliber weapon. Five bullets and one bullet fragment were recovered from the area.

Some of the bullets were .380 automatic caliber bullets. The bullets exhibited characteristics consistent with having been fired from two different .380 caliber weapons. One of the bullets had traveled through the window of Jeannette Conner, who lived in an apartment across the street from the shooting, on the night of June 9. During their investigation, the police also found a .40 caliber bullet from the roof of an apartment near the shooting. In addition, three holes resembling gunshot damage were found in the exterior of a nearby apartment.

Earlier on the night of the shooting, [Sykes] had gone to a Fridays restaurant with Jannalesse, Sabrina Bush, and her boyfriend, Trent Lassiter. Bush and Jannalesse waited in the car outside the restaurant while [Sykes] and Lassiter went inside for about thirty minutes. After that time, Bush, Jannalesse, and Lassiter drove to Wal-Mart together. The group returned to Denbigh Trace Apartments after the police had arrived in response to the shooting incident.

Hakeem Gray went to [Sykes's] apartment after the shooting occurred. Gray testified that he smelled bleach on [Sykes's] hands. [Sykes] commented that he was going to turn himself in for the shooting. [Sykes] also discussed establishing an alibi for the time of the shooting with Gray, Carlos Franco, and Jannalesse. [Sykes] indicated he planned to produce receipts from Wal-Mart, even though he had not accompanied the group there that night. [Sykes] had a .380 caliber gun he asked Franco to sell in Williamsburg. Regarding the gun, [Sykes] commented, "That little bitch ain't even jam."

[Sykes] turned himself in to the police on June 11. When the police confronted [Sykes] with the charge against him, he asked what the police wanted to know. He claimed he had traveled from Fridays to Wal-Mart on the night of the shooting, then returned to Denbigh Trace. [Sykes] denied shooting Johnson.

Lonnie Boone and Karen Coleman were playing cards at her apartment at the time of the shooting. Both Boone and Coleman heard gunfire that was followed by another series of gunshots about five minutes later. Boone looked out the window and saw a slim man in a white shirt firing a gun. Boone testified that he had heard other gunfire in the Denbigh Trace area that night.

Holloman testified that [Sykes] fired his gun into the air, emptying his weapon, to get Johnson and his friends to leave the area. Holloman stated that one of the three fleeing men also was firing a gun. Holloman denied that [Sykes] shot Johnson. Holloman said she saw

Brian Frazier at the time of the shooting, running in a crouched position.

William Conrad, [Sykes's] expert in the field of firearms and tool mark examination, testified that his examination of the recovered bullets proved they were fired from two different .380 caliber weapons. Based upon the distance between the recovered cartridge casings and the place where Johnson fell to the ground, as well as the trajectory of the bullet as it passed through Johnson's body, Conrad opined it was unlikely the fatal shot was fired from a .380 weapon from [Sykes's] location. However, the medical examiner opined that despite profuse internal bleeding, Johnson could have run a short distance after he was shot.

. . . .

[Sykes] contends that the evidence proved three weapons were fired in the vicinity on the night Johnson was killed. While the evidence tended to show three guns had been fired in that area at some time, there was no conclusive proof that all the shots were fired on the night of Johnson's death. The jury heard [Sykes's] evidence regarding the presence of other shooters at the scene, and resolved any conflicts in the evidence.

[Sykes] had an angry exchange with Johnson just before the shooting. [Sykes] had pointed a gun at Johnson, and friends had to persuade [Sykes] to calm down. As Johnson and his friends were walking away from the scene of the argument, [Sykes] fired his gun repeatedly. The police later found eight cartridge casings from a .380 caliber weapon, the same type gun [Sykes] possessed. Although other bullets found from two .380 caliber weapons and a .40 caliber gun were found in the vicinity, the only bullet proven to have been fired on June 9 was the one that entered Conner's apartment. Moreover, the jury heard evidence that [Sykes] attempted to fabricate an alibi for his whereabouts at the time of the shooting. Considering all these facts and circumstances, the evidence was sufficient to prove beyond a reasonable doubt that [Sykes] was guilty of first-degree murder, and the trial court did not err in denying [Sykes's] motion to strike the evidence.

<u>Sykes v. Commonwealth</u>, No. 1700-07-1, at 1-5 (Va. Ct. App. Feb. 13,

2008) (citations omitted).[1] The Supreme Court of Virginia summarily refused Sykes's petition for appeal. Sykes v. Commonwealth, No. 080663, at 1-5 (Va. Sept. 2, 2008).

Sykes, by counsel, filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, in which he raised the same claims he now raises in his petition pursuant to 28 U.S.C. § 2254.[2] Petition for Writ of Habeas Corpus, Sykes v. Dir., Dep't of Corr., No. 091789 (Va. filed Sept. 2, 2009). The Supreme Court of Virginia denied the petition on the merits. Sykes, No. 091789 (Va. Apr. 8, 2010).[3]

## II. ANALYSIS

### A. AEDPA's Standard of Review

Because all of the claims raised here have previously been adjudicated on the merits by the Supreme Court of Virginia, this Court may not grant habeas relief unless the Supreme Court of Virginia's adjudication of the claims (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "resulted in a decision

---

[1] The opinion was authored by a single member of the Court of Appeals. Thereafter, a three-judge panel refused Sykes's petition for appeal. Sykes, No. 1700-07-1 (Va. Ct. App. Apr. 3, 2008).

[2] Accordingly, Respondent concedes that Sykes's claims are exhausted. (Br. Supp. Mot. Dismiss ¶ 5.)

[3] Sykes petitioned for rehearing, which the Supreme Court of Virginia denied. Sykes, No. 091789 (Va. June 18, 2010).

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Regarding the "contrary to" aspect of § 2254(d)(1), the United States Court of Appeals for the Fourth Circuit recently summarized:

> "A state court's decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result.

DeCastro v. Branker, --- F.3d ----, No. 10-5, 2011 WL 2164115, at *5 (4th Cir. June 3, 2011) (alteration in original)(quoting Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010)) (internal quotation marks omitted). Regarding the "unreasonable application" aspect of § 2254(d)(2):

> [A] state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e] Court's cases but unreasonably applies it to the facts of the particular . . . case," or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."

Id. (omission and second alteration in original) (quoting Lewis, 609 F.3d at 300-01) (internal quotation marks omitted). In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

6

disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

### B. Ineffective Assistance of Counsel

To prove a constitutional claim for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation was deficient and that actual prejudice stemmed from the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Proving deficient representation "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. That is, a petitioner must show that counsel's performance at trial "'fell below an objective standard of reasonableness' based on the situation at the time rather than on hindsight." Buckner v. Polk, 453 F.3d 195, 201 (4th Cir. 2006) (quoting Strickland, 466 U.S. at 688). Proving prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### C. Claim One

In Claim One, Sykes alleges that he received ineffective assistance of counsel regarding his trial attorney's treatment of

venireman Grover Lilley. Specifically, Sykes alleges that he received ineffective assistance when trial counsel (a) failed to object to the Circuit Court asking leading questions in an attempt to rehabilitate Lilley, (b) failed to voir dire Lilley after Lilley "revealed that he was not free from exceptions" (§ 2254 Pet. 13), (c) failed to move to strike Lilley for cause, and (d) failed to object to the empaneling of the jury.

During voir dire of the venire, Lilley was questioned. Lilley indicated that he was a witness in an unrelated case against two individuals who stole a pistol from Lilley's home. Lilley also indicated that an Assistant Commonwealth's Attorney lived across the street from Lilley. Sykes's attorney used his third peremptory challenge to strike Lilley. Sykes argues that his attorney should have struck Lilley for cause, thereby saving his peremptory challenge for another juror.

Sykes presented this claim to the Supreme Court of Virginia. The Supreme Court of Virginia, holding that Sykes satisfied neither of <u>Strickland</u>'s prongs, reasoned as follows:

> The record, including the affidavit of counsel, demonstrates that counsel found the judge's questioning of Lilly [sic] to be appropriate and that Lilly [sic] was free of bias and qualified to be a juror. Lilly [sic] . . . indicated that he was able to review the case impartially and counsel did not believe rehabilitation was necessary and did not believe that cause existed to strike Lilly [sic]. Petitioner provides no evidence that potential Juror Lilly [sic] was actually biased or unable to be impartial.

8

Sykes, No. 091789, at 2. Sykes does not identify any unreasonable application of law or determination of facts by the Supreme Court of Virginia. Instead, Sykes merely rehashes the argument he raised before the Supreme Court of Virginia. The bulk of that argument consists of the contention that Lilley was biased because he was a victim in an unrelated, pending case.

Sykes, however, glosses over the fact that Lilley never served on Sykes's jury because Sykes's attorney struck Lilley using a peremptory challenge. Nevertheless, Sykes contends that he was prejudiced by the manner in which his attorney struck Lilley because "there is more than a reasonable likelihood that the outcome would have been different - that Lilley would have been struck for cause." (§ 2254 Pet. 21.)

The Fourth Circuit has made clear that this sort of claim is meritless:

> [Petitioner] also claims that the state trial court deprived him of his constitutional rights . . . by failing to exclude for cause prospective jurors . . . . None of the jurors that [Petitioner] contends were improperly qualified, however, sat on the jury; they were all struck by peremptory challenges. Thus, [Petitioner] was not denied his right to an impartial jury. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988) (holding that even though trial court erred in qualifying a juror, defendant's constitutional rights were not violated because he had to use a peremptory challenge to excuse the juror, stating, "we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury"); Satcher [v. Pruett], 126 F.3d [561, 573-74 (4th Cir. 1997)]; Gaskins v. McKellar, 916 F.2d 941, 949 (4th Cir. 1990) (explaining that "'[a]ny claim that the jury was not impartial . . . must focus . . . on the jurors who

actually sat' and cannot be established simply by showing the loss of a peremptory challenge" (second & third alterations in original) (quoting Ross, 487 U.S. at 86)).

Gilbert v. Moore, 134 F.3d 642, 655 (4th Cir. 1998) (parallel citations omitted).[4] The Supreme Court of Virginia's determination that Sykes had not met Strickland's two prongs was not unreasonable. 28 U.S.C. § 2254(d). Accordingly, Claim One will be DISMISSED.

D.  **Claim Two**

In Claim Two, Sykes alleges he received ineffective assistance of counsel regarding the absence of a blood trail. To better understand the implications of this claim, Sykes summarizes the two theories of this case:

> The Commonwealth's theory of the case was that [Sykes], with his .380 handgun, fired the shot that killed Johnson
> At [Sykes's] location, the police found eight shell casings from a .380 caliber weapon. According to the police, that location was 109 yards from where the police found Johnson with a pool of blood underneath him.

---

[4] This holding applies with equal force to a claim for ineffective assistance of counsel. Sykes "does not claim that . . . bias tainted the petit jury actually impaneled." Clark v. Collins, 19 F.3d 959, 965 (5th Cir. 1994) (emphasis added). "This claim fails to allege a reasonable probability that, but for his attorney's failure to inquire into . . . bias of [a] prospective juror[], his trial would have reached a different result." Id. (emphasis added); see also United States v. Chavez-Arellano, No. 00-41330, 2001 WL 1131928, at *2 (5th Cir. Sept. 19, 2001) ("Were we to assume that [petitioner's] attorney erred during jury selection, he nonetheless fails to show that he suffered prejudice through the seating of a biased jury. There is no evidence or even acceptable suggestion that any biased, incompetent, or ineligible juror was seated at [petitioner's] trial." (citing Clark, 19 F.3d at 965 & n.25)(footnote omitted)).

> Although Johnson fell and died more than 100 yards from [Sykes's] location, the Commonwealth presented testimony from Arroyo that Johnson was approximately 50 yards from [Sykes] when Johnson was struck by the bullet.
> The Commonwealth also presented testimony from Dr. Leah Bush, the state's pathologist, who opined that Johnson could have run another half of a block to a full block before his blood pressure dropped to the point of causing him to collapse and die, which was more than 100 yards from [Sykes's] location at the time of the shooting.
> The defense theory was that [Sykes] did not fire the bullet that killed Johnson. . . .
> . . . .
> Johnson fell and died of massive internal bleeding more than 100 yards from where [Sykes] was standing.
> An expert for the defense, William Conrad ("Conrad"), testified that it was unlikely that the fatal shot was fired from a .380 weapon from [Sykes's] location.
> Garrett, one of Johnson's companions and a witness for the Commonwealth, testified that Johnson took "maybe two steps and then dropped" after being shot. This evidence refuted both Arroyo's claim that Johnson was shot only 50 yards from [Sykes's] location and the Commonwealth's expert's claim that Johnson traveled more than 50 yards after being shot.

(§ 2254 Pet. ¶¶ 25-34 (paragraph numbers, citations, and headings omitted).) In his § 2254 petition, Sykes alleges that his trial attorney was ineffective (A) for failing to move to dismiss the charges because the Commonwealth failed to preserve and disclose the exculpatory absence of a trail of blood between where Johnson was shot and where the police found him, and (B) for failing to present argument and evidence of the absence of this blood trail at trial. (§ 2254 Pet. 22.)

Sykes presented this claim to the Supreme Court of Virginia. The Supreme Court of Virginia, in ruling that Sykes did not satisfy either of Strickland's two prongs, reasoned as follows:

> [Sykes] fails to provide any evidence to support his speculation that blood spatter or a trail of blood on the ground would have occurred in the area the victim traveled before succumbing to his wound. Furthermore, the record, including the affidavit of counsel, demonstrates that counsel made a tactical decision to focus on ballistics' evidence and other evidence that counsel believed weighed stronger in [Sykes's] defense.

Sykes, No. 091789, at 3. The Supreme Court of Virginia rested its conclusion on, inter alia, counsel's tactical decision to focus on evidence stronger than the absence of a blood trail. Indeed, the facts presented before the Supreme Court of Virginia, 28 U.S.C. § 2254(d)(2), established that Sykes's attorney made a tactical decision to focus on ballistics and other evidence instead of the absence of a blood trail. (Br. Supp. Mot. Dismiss Ex. F. Ex. 2 ("Long Aff.") ¶¶ 13-19.) This Court "must accept the state habeas court's express factual finding that petitioner's counsel [proceeded as he did] for tactical reasons." Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (citing Strickland, 466 U.S. at 689; Jeffers v. Leeke, 835 F.2d 522, 525 (4th Cir. 1987)).[5] The

---

[5] See also Harrington, 131 S. Ct. at 790 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." (citations omitted) (internal quotation marks omitted)); Strickland, 466 U.S. at 689 (citing United States v. Decoster, 624 F.2d 196, 208 (D.C. Cir. 1976)) (protecting "the wide latitude counsel must have in making tactical decisions"); Doane v. Johnson, No. 1:09cv1154 (GBL/JFA), 2011 WL 1659312, at * 8 (E.D. Va. Apr.

Supreme Court of Virginia's determination that Sykes had not met Strickland's two prongs was not unreasonable. 28 U.S.C. § 2254(d). Accordingly, Claim Two will be DISMISSED.

E. Claim Three

In Claim Three, Sykes contends that he received ineffective assistance of counsel during the prosecutor's closing and rebuttal arguments when his trial attorney failed to request a mistrial; failed to request cautionary instructions; and failed to object to (A) the prosecutor's improper and highly prejudicial misrepresentations of material evidence, (B) the prosecutor misleading the jury regarding the burden of proof, and (C) the prosecutor asserting personal knowledge and his own opinion. The statements with which Sykes takes issue are summarized in his § 2254 petition as follows:

> Most significant of [Prosecutor] Gwynn's factually inaccurate claims to the jury was that his eyewitnesses agreed with each other as to where the victim was when he was shot. . . .
>
> . . . .
> Gwynn repeatedly challenged that there was not "credible" evidence of another shooter. Gwynn argued to the jury that there wasn't "any credible evidence to convince you that there were multiple shooters out there that night . . . [.]"
> Gwynn went still further on his second closing argument, telling the jury that "you have to believe that there is credible evidence that there were multiple shooters. You have to believe that every hole is a bullet hole. You have to believe there is credible

---

29, 2011) (identifying as "well established" the notion that an attorney's strategic choices are "'virtually unchallengeable'" (quoting Gray v. Branker, 529 F.3d 220, 229 (4th Cir. 2009))).

>   evidence that every hole is a result of a bullet hole that was fired that night. Where is the credible evidence?"
>
>   Gwynn also intentionally inflamed the passions of the jury in his attack on the credibility of key defense witness Freda Holloman. He asked the jury whether, after she testified, did they "get the feeling that you heard the truth from her." Gwynn went on to tell the jury, "I have absolutely no doubt when she said this that all of you individually and collectively were offended. What did she say? She said she saw two young men running with Javon and one of them shot him right here."
>
>   When arguing to the jury as to the key piece of evidence of where the victim was when shot, Gwynn said[,] "We know Javon was shot up here. She was wrong about that. Once again, did you not take offense when you heard her say that, that she came in here and accused one of his friends of taking his life?"

(§ 2254 Pet. ¶¶ 117-22 (paragraph numbers and citations omitted).)

Sykes presented this claim to the Supreme Court of Virginia. The Supreme Court of Virginia, in ruling that Sykes did not satisfy either of <u>Strickland</u>'s two prongs, reasoned as follows:

>   The record, including the affidavit of counsel, demonstrates that the jury was instructed that closing arguments are not evidence, that counsel made a tactical decision not to object during closing argument, and that the prosecutor's argument was based on fair inferences of the testimony and evidence offered at trial.

<u>Sykes</u>, No. 091789, at 3.

The Supreme Court of Virginia's application of <u>Strickland</u> was not unreasonable.[6] Nor was the Supreme Court of Virginia's decision based on an unreasonable determination of the facts. The Circuit Court instructed the jury that "[o]pening statements and

---

[6] Sykes has not suggested that the Supreme Court of Virginia's application of <u>Strickland</u> was contrary to federal law.

14

closing arguments of the attorneys are intended to help you in understanding the evidence and applying the law, but they are not evidence." (Feb. 5, 2007 Trial Tr. 72.) Jurors are presumed to follow the court's instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987); see also Strickland, 466 U.S. at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the . . . jury acted according to the law."). Further, it is well established that "arguments of counsel generally carry less weight with a jury than do instructions from the court." Boyde v. California, 494 U.S. 370, 384 (1990). A state habeas court reasonably applies Strickland when it determines that a prosecutor's statements were not so inflammatory as to require an objection in light of the court's instruction to the jury that closing arguments by counsel are not evidence. See, e.g., Linebaugh v. Belleque, 385 F. App'x 751, 753 (9th Cir. 2010).

The Supreme Court of Virginia's determination that Sykes had not met Strickland's two prongs was not unreasonable. 28 U.S.C. § 2254(d). Accordingly, Claim Three will be DISMISSED.

### III. CONCLUSION

For the reasons stated above, Respondent's motion to dismiss (Docket No. 3) will be GRANTED. Sykes's claims will be DISMISSED. The petition for writ of habeas corpus will be DENIED. This action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Sykes is entitled to further consideration in this matter. A certificate of appealability will therefore be DENIED.

The Clerk is DIRECTED to send a copy of the Memorandum Opinion to Sykes and all counsel of record.

An appropriate Final Order will accompany this Memorandum Opinion.

And it is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: July 17, 2011
Richmond, Virginia

16